UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jack B. Smith,<br>Plaintiff,<br><br>v.<br><br>American Accounts and Advisers Inc.,<br>Tessa Olson and Bryan McGroarty<br>Defendants. | **FIRST AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

## JURISDICTION

1. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") and invasions of Plaintiff's personal privacy by the Defendant in its illegal efforts to collect a consumer debt.

3. This District is the proper venue because the relevant acts and transactions occurred within Minnesota, Plaintiff resides within Minnesota and Defendants transact business within Minnesota.

## PARTIES

4. Plaintiff, Jack B. Smith, is a natural person residing in the City of Plymouth, County of Hennepin, and State of Minnesota. Plaintiff is a "consumer" or a "person" affected by a violation of the FDCPA, as those terms are defined by 15 U.S.C. § 1692a(3) and 1692k.

5. Defendant, American Accounts and Advisers Inc., is a Minnesota corporation engaged in collecting debts in Minnesota, with its principal place of business located at 7460 80th Street, Cottage Grove, Minnesota, 55016 ("Defendant AAA"). The principal purpose of Defendant AAA is the collection of debts using the mails and telephone, and Defendant AAA regularly attempts to collect debts allegedly to be due to another.

6. Defendant, Tessa Olson, is a natural person employed by Defendant AAA as a debt collector at all times relevant to this Complaint, and upon information and belief located at its Cottage Grove, Minnesota, collection office ("Defendant Olson" or "Lisa"). Defendant Olson, upon information and belief, uses the alias "Lisa" to disguise her true identity when she attempts to collect debts.

7. Defendant, Bryan McGroarty, is a natural person employed by Defendant AAA as a debt collector at all times relevant to this Complaint, and upon information and belief located at its Cottage Grove, Minnesota, collection office.

**FACTS**

8. On July 4, 2009, Plaintiff was seriously injured when the vehicle he was driving to deliver newspapers rolled over his body. He suffered compound fractures of his ankle and knee. The injuries required several surgeries to repair his legs.

9. Plaintiff was fully insured at the time of his accident. Plaintiff had health insurance through Health Partners, automobile insurance through Progressive Insurance, and worker's compensation insurance through Aegis Security.

10. As a result of his injuries and multiple surgeries, Plaintiff incurred significant medical bills, including a bill from Metropolitan Anesthesia Network, LLP, for treatments allegedly received during Plaintiff's hospitalization.

11. Plaintiff's health, automobile and workers' compensation insurance failed to pay the medical bill from Metropolitan Anesthesia Network (the "debt").

12. Upon information and belief, sometime in November 2009, the debt was sold, transferred, or assigned to Defendant AAA for collection.

13. In a letter dated December 1, 2009, Defendant advised Plaintiff that the debt had been referred to their firm for collection. "Mr. Baker" signed the letter. A copy of the letter is attached as "Exhibit A."

14. On December 8, 2009, Plaintiff received a phone call from "Lisa," a debt collector and employee of Defendant AAA. "Lisa" is the alias used by Defendant Olson. During this phone call Lisa demanded that Plaintiff pay the debt. Plaintiff explained to Lisa that the debt was the responsibility of his insurance providers and that she should contact them for a payment. Plaintiff provided the insurance information to Lisa.

15. On December 9, 2009, Plaintiff received a phone call from Lisa. Once again, Lisa demanded payment of the debt from Plaintiff. Plaintiff again explained to Lisa that the debt was the responsibility of his insurance providers. Plaintiff provided the insurance information to Lisa. Lisa responded that she would call the insurance companies to discuss payment.

16. Upon information and belief, Lisa never contacted Health Partners or any of Plaintiff's insurance companies.

17. Plaintiff received a second phone call from Lisa on December 9, 2010. Lisa claimed to have talked with Health Partners and that they were not responsible for the debt. Lisa told Plaintiff that the only way to take care of the situation was for Plaintiff to pay the debt with his VISA credit card and follow-up with Health Partners to receive reimbursement. In addition, Lisa stated, "Here's the deal. You seem like a nice guy. I would hate to ruin your credit."

18. On December 11, 2009, Lisa called Plaintiff's place of employment. Lisa talked to Brad Monitor, a co-worker of Plaintiff. Lisa asked to speak with Plaintiff. Monitor told Lisa that the Plaintiff was not available at the phone number she had called. Lisa told Monitor that he should give Plaintiff a message to call her at 612-287-6118 and Lisa explained to Monitor that Plaintiff knew who she was and why she was calling. During this phone call, Lisa was rude and aggressive. Monitor asked for the name of Lisa's employer. Lisa refused to provide Monitor with the name of her employer.

19. After the phone call concluded, Monitor sent an email to Plaintiff explaining that Lisa had called the office, that she said Plaintiff knew who she was, demanded that Plaintiff call her at 651-287-6121 and would not identify the company she called from.

20. Plaintiff was anxious, upset, humiliated and frustrated by the invasion of his privacy and illegal calls to his place of employment.

21. In a letter dated December 12, 2009, Plaintiff informed Defendant AAA that Plaintiff disputed the debt and explained that the Plaintiff's health insurance company or

worker's compensation insurance was responsible for payment of the debt. A copy of the letter is attached as "EXHIBIT B."

22. On December 15, 2009, Defendant McGroarty placed a phone call to Plaintiff's place of employment. Monitor once again received the phone call and told Defendant McGroarty that Plaintiff was not available at the phone number. Defendant McGroarty told Monitor that he should give a message to Plaintiff that he should call "Brian" at 651-287-6121.

23. Plaintiff was anxious, angry, upset, humiliated and frustrated by the invasion of his privacy and illegal calls to his place of employment.

24. On December 17, 2009, Plaintiff contacted the Minnesota Attorney General's Office to complain about Defendant's threats to harm Plaintiff's credit and repeated harassment in an attempt to collect the debt.

25. In a letter dated December 28, 2009, the Minnesota Attorney General's Office explained to Defendant AAA that Plaintiff complained to their office about Defendants' threats to harm Plaintiff's credit and repeated harassment in an attempt to collect the debt, despite being told repeatedly that the debt was supposed to be covered by his insurance. A copy of the letter is attached as "Exhibit C."

26. In a letter dated December 31, 2009, Defendant AAA demanded payment of the debt. The letter threatened that legal action would be recommenced if Plaintiff failed to promptly make a payment in full. A copy of the letter is attached as "Exhibit D."

27. On January 8, 2009, Plaintiff sent another letter to Defendant informing them again that Plaintiff was not responsible for the debt and the debt should be paid by one of his three insurance providers. A copy of the letter is attached as "Exhibit E."

28. As a result of the acts alleged above, Plaintiff suffered emotional distress, including anxiety, depression, headaches, embarrassment, and sleeplessness.

## Respondeat Superior Liability

29. The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant AAA, who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant AAA.

30. The acts and omissions by Defendant Olson, Defendant McGroarty and other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant AAA is collecting consumer debts.

31. By committing these acts and omissions against Plaintiff, these individual Defendants and these other debt collectors were motivated to benefit their principal, Defendant AAA.

32. Defendant AAA is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota tort law, in their attempts to collect this debt from each Plaintiff.

33. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of emotional distress, including anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, headaches, crying, loss of concentration, sleeplessness, amongst other negative emotions, as well as suffering from the unjustified and abusive invasions of Plaintiff's personal privacy.

## TRIAL BY JURY

34. Plaintiff is entitled to and hereby requests a trial by jury. U.S. Cont. Amend. 1. Fed R. Civ. P. 38.

## CAUSES OF ACTION

### COUNT I.
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

35. Plaintiff incorporates by reference all foregoing paragraphs as though fully stated herein.

36. Defendants violated the FDCPA. Defendants' violations include, but are not limited to, the following:

    a. The Defendants violated 15 U.S.C. §1692c(a)(1) by communicating with the Plaintiff at a time and place that the Defendants knew or should have known was inconvenient to plaintiff, specifically, communicating with Plaintiff at this place of employment and at a time when the Plaintiff was recovering from serious injuries.

b. The Defendants violated 15 U.S.C. §1692c(a)(3) by communicating with Plaintiff and his co-workers at Plaintiff's place of employment when Defendants knew or had reason to know that the Plaintiff's employer prohibited Plaintiff from receiving such communications.

c. The Defendants violated 15 U.S.C. §1692b(3) by communicating with Brad Monitor more than once.

d. The Defendants violated 15 U.S.C. §1692c(b) by communicating with third parties, including Plaintiff's coworker Brad Monitor in telephone calls on or about December 1, 2009, and December 15, 2009.

e. The Defendants violated 15 U.S.C. §1692b(1) by failing to identify her employer when expressly requested by Brad Monitor on December 9, 2009.

f. The Defendants violated 15 U.S.C. §1692g (b) by continuing to communicate with the Plaintiff after Plaintiff clearly and unambiguously disputed the validity of the debt in a letter dated December 12, 2009.

g. The Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse Plaintiff in connection with the collection of the debt.

h. The Defendants violated 15 U.S.C. §1692d(5) by causing Plaintiff's telephone to ring and engaging in telephone conversation continuously with intent to annoy, abuse, or harass Plaintiff and Plaintiff's co-worker, Brad Monitor.

i. The Defendants violated 15 U.S.C. §1692e by using false, deceptive and misleading representation and means in connection with the collection of the

debt. Defendant Olson misled Plaintiff into believing that she had contacted Plaintiff's health insurance company and the only way for Plaintiff to resolve the debt was to pay it with his VISA credit card and seek reimbursement from his health insurance company.

j. The Defendant violated 15 U.S.C. §1692e(4) by representing and implying that nonpayment of the debt would result in the garnishment and attachment of Plaintiff's wages when Defendant had no ability or intention of taking such action.

k. The Defendants violated 15 U.S.C. §1692e(8) by threatening to communicate to credit bureaus information which Defendants knew was false and failing to communicate that the debt was disputed. Defendant Olson indicated that she could ruin Plaintiff's credit despite knowing that the information that Defendant Olson had about the debt was incorrect and that she would be communicating false information to the credit bureaus.

l. The Defendants violated 15 U.S.C. §1692f by using unfair and unconscionable means to collect the debt.

m. The Defendants violated 15 U.S.C. §1692g(b) by continuing to attempt to collect the debt from the Plaintiff after the Plaintiff disputed the validity of the debt twice during the thirty day period described in 15 U.S.C. §1692g(a).

## COUNT II.
## INVASION OF PRIVACY

37. Plaintiff incorporates by reference all foregoing paragraphs as though fully stated herein.

38. Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff when it contacted Plaintiff's workplace and coworkers in an effort to coerce and intimidate Plaintiff to make a payment for a debt that Plaintiff did not owe.

39. Plaintiff had a reasonable expectation of privacy in his solitude, seclusion and/or private concerns or affairs.

40. The intrusion by Defendants occurred in ways that were highly offensive and would be highly offensive to a reasonable person in Plaintiff's position.

41. As a result of Defendants' conduct, Plaintiff suffered emotional distress and out-of-pocket expenses in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that relief be granted as follows:

1. That judgment be entered against Defendants for actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

2. That judgment be entered against Defendants for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) and (B);

3. That the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);

4. An award for actual and compensatory damages for invasion of privacy against Defendants in an amount to be determined at trial; and

5. That the Court grants such other and further relief as may be just and proper.

| | |
|---|---|
| Date:  **8/6/10** | Respectfully Submitted,<br><br>**HEANEY LAW FIRM, LLC**<br><br>**s/ Mark L. Heaney**<br>Mark L. Heaney, Esq.<br>Attorney I.D. #0333219<br>13911 Ridgedale Drive, Suite 110<br>Minnetonka, Minnesota 55305-1773<br>Telephone: (952) 933-9655<br>Facsimile:  (952)<br>mark@heaneylaw.com<br>***Attorney for Plaintiff*** |